UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JEREMY CURL, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-0264 |
| | § | |
| BRAZORIA COUNTY SHERIFF'S | § | |
| OFFICE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremy Curl filed this lawsuit while incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). He claims that Defendants used excessive force during his arrest and denied him adequate medical care during his pre-trial detention. Currently pending before the Court is Defendants' motion for summary judgment (Dkt. 37), to which Plaintiff has responded (Dkt. 51) and Defendants have replied (Dkt. 57). Plaintiff has filed a motion to amend his complaint (Dkt. 53), which Defendants oppose (Dkt. 56). The motions are ripe for decision. After reviewing all of the evidence submitted, the parties' briefing, the applicable law, and all matters of record, the Court concludes that leave to amend the pleadings should be **DENIED** and summary judgment should be **GRANTED** for Defendants.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this suit *pro se* on September 17, 2015, alleging that Defendants violated his constitutional rights in connection with his October 2013 arrest and pre-trial

detention (Dkt. 1). He initially brought suit against the Brazoria County Sheriff's Office and "unnamed officers, *respondeat superior*, sued in their individual and official capacities" (*id.* at 1). In October 2017, while Plaintiff was still proceeding *pro se*, the Court Plaintiff granted leave to amend his pleadings (Dkt. 28). The amended pleading substituted Brazoria County for Brazoria County Sheriff's Department, and named Deputies Matt West, Paul Stackhouse, and Linsy Mariam as individual defendants (Dkt. 24).

Plaintiff has now been released from TDCJ. He proceeded *pro se* until March 21, 2018, when counsel entered an appearance on his behalf. Shortly thereafter, Curl moved for leave to file a second amended complaint. His proposed amendment provides additional factual allegations about the traffic stop, arrest, and use of force. It also alleges new theories of liability against Brazoria County. *See* Dkt. 53-1, at 14-21 (advancing claims against Brazoria County based on alleged municipal policy of racial profiling, alleged municipal policy of denying medical care to detainees, and "single incident" liability, among other theories).

## B. Factual Background

Plaintiff Jeremy Curl alleges in this suit that he, a "Black male," was beaten by Brazoria County Sheriff Deputies Matt West and Paul Stackhouse during a traffic stop (Dkt. 53-1, at 2). Curl was arrested and taken to the Brazoria County Detention Center, where he was incarcerated for two days before posting bond. With their summary judgment motion, Defendants have submitted affidavits and contemporaneous police reports, in addition to video and still photos from their encounter with Curl. Plaintiff also

has submitted video evidence. Plaintiff has not submitted an affidavit or declaration averring to facts relevant to his summary judgment briefing, but his proposed amended pleadings provide additional factual allegations. Although the Court denies leave to amend the pleadings for the reasons stated below, the Court will consider the facts alleged by Plaintiff in the proposed amendment when addressing Defendants' summary judgment motion.

On October 16, 2013, Curl was driving on State Highway 288 in Brazoria County, Texas, when Deputy West pulled him over. On the video from West's patrol car camera, West is visible approaching Curl's vehicle and can be heard asking Curl, "You all right?", and requesting his license.[1] West states in his affidavit that Curl "did not immediately pull to the shoulder" and did not comply with West's instructions to exit the vehicle until West instructed him a third time (Dkt. 37-13, at 2-3). Plaintiff states that he was "trying to retrieve his insurance," that West did not comply with "policy" requiring him to inform Curl of the reason for the stop, and that West "came to the window of [Plaintiff's vehicle] without probable cause" (Dkt. 53-1, at 2, 6-7).

The video evidence demonstrates that Curl exited his vehicle around the time that Deputy Stackhouse arrived on the scene. Curl was holding multiple papers and a cell phone. Curl, West, and Stackhouse all stood on the shoulder of the road, between Curl's vehicle and a patrol vehicle.[2] On the videos, Stackhouse can be heard asking for Curl's

---

[1]    Dkt. 37-14 (DVR 3508), at 12:34-12:35.

[2]    Dkt. 37-14 (DVR 3508), at 12:36-12:37.

papers and asking what was in the "wrapper."[3]  Both officers aver that Curl did not

comply with the instructions to show what he was holding.[4]  Curl alleges that he told the

officers that the papers were "from the glove compartment," and that he "was afraid to

relinquish" his cell phone to the officers "because of the need to call someone if he was

shot by the officers" (Dkt. 53-1, at 7).

West opines that, based on his training and experience, Curl's noncompliance with

the officers' instructions signaled a "great likelihood that [he was] concealing . . . a

weapon or contraband," and notes that Curl had not yet been patted down (Dkt. 37-13, at

3).  Stackhouse's narrative report states that Curl was noncompliant "and began to step

backward away from me . . . which led me to believe that he was going to run" (Dkt. 37-

11, at 4).  Curl agrees that he had not been patted down for weapons or contraband at this

point (Dkt. 53-1, at 8), but notes that when officers later conducted a pat-down, they

found no weapons on him.  He asserts that, because he was not armed, he did not pose a

danger to Defendants (Dkt. 51, at 11).

When Curl did not comply with Stackhouse's request to reveal what was in his

hands, the officers reached for the papers and then grabbed Curl's wrists.  The officers

state that Curl resisted, jerking his arm upward (Dkt. 37-13, at 3; Dkt. 37-11, at 4).

Officer West provides details:

---

[3]      Dkt. 37-14 (DVR 3508), at 12:37; Dkt. 37-16, at 00:40-00:52.

[4]      *See* Dkt. 37-13, at 3 (West affidavit).  Stackhouse's narrative in the incident report states
that Curl did not comply with his requests for the papers in his hand and that Stackhouse
"observed [Curl] to be extremely nervous stuttering his words and uncontrollabl[y] shaking"
(Dkt. 37-11, at 4).

> When Curl does not show what is in his hand I move closer to him and grasp the wrist of the hand that is holding the unidentified object. . . . Deputy Stackhouse tells him, "don't make this hard." Curl responds by jerking his right arm upward, away from my grasp and aiming his elbow toward my chin. Stackhouse moves forward and places his left hand on Curl's back and his right hand on the object in Curl'[s] right hand. Curl continues to hold onto to [sic] his cell phone and what appears to be a small package in his right hand. Stackhouse releases/loses his hold on the object in Curl's right hand. Curl grabs Stackhouse's right wrist with Curl's left hand and pushes Stackhouse's arm away from him and moves his left leg forward in an attempt to flee. Curl continues to twist his right arm to loosen my grip on his wrist. Curl wrenches his wrist out of my hand and attempts to run away; Stackhouse tries to grab Curl around the neck and I grab hold of Curl's shirt by the left sleeve.

(Dkt. 37-13, at 3). The videos corroborate West's account. The officers are audible asking Curl what he is holding, telling him "don't make this difficult," and reaching for the items in Curl's hand. Curl then resists and pulls his arm up.[5] The video also captures officers instructing Curl to put his hands behind his back.[6] In the still photos from the video, Curl appears to have his hands behind his back (Dkt. 37-19), then can be seen moving his right arm up, elbow first (Dkt. 37-20), and then pulling his body away from the officers (Dkt. 37-21).

Curl and the officers then struggled, with Curl moving towards the highway's traffic lanes while the officers tried to gain physical control over him.[7] In the still photographs, Stackhouse has arm on Curl's shoulder and West reaches both hands to Curl

---

[5]     *See* Dkt. 37-17 (slow motion video), at 00:20-00:28; Dkt. 37-14 (DVR 3508), at 12:37; Dkt. 37-16, at 00:48-00:53.

[6]     Dkt. 37-14 (DVR 3508), at 12:37.

[7]     Dkt. 37-16, at 00:54-00:56; Dkt. 37-17, at 00:28-00:40.

as Curl moves towards the traffic lanes.[8]  West states that, when Curl pulled the officers closer to traffic lanes, he placed the officers and the public in danger.[9]  Curl states in his proposed amended pleadings that he "jerked his hand away [from the officers] and tried to run" because he feared for his safety due to recent police shootings of black motorists (Dkt. 53-1, at 8).  He maintains that he "never grabbed, hit, pushed, hit or struck" the officers and notes that he was not charged with assault on an officer (*id.*).

Curl and the officers then moved away from the traffic lanes and towards the shoulder, still struggling.  West states in his affidavit that he and Stackhouse pulled Curl away from the traffic and, in the process, West fell on the shoulder of the road (Dkt. 37-13, at 3).  He further states that Stackhouse forced Curl to the ground and Stackhouse fell on his back, trying to gain control of Curl who was "kneeling/squatting/sitting position with his arms locked at his sides and his hands hidden underneath him" (*id.* at 4).  In the slow motion video, Curl and the officers are visible between the patrol vehicles, and can be heard struggling. It appears that West is on the ground, struggling with Curl, that Curl is on his feet but bent over, and that Stackhouse eventually forces Curl to the ground.[10]

The parties agree that West then delivered eighteen blows to Curl.  *See* Dkt. 37-13, at 4 (West states that he administered nine knee thrusts and nine punches); Dkt. 53-1, at 2-3 (Curl alleges that the officers delivered eighteen blows).  West avers that, during the struggle, the officers were attempting to place handcuffs on Curl but could not access his

---

[8]     Dkt. 37-22; Dkt. 37-23; Dkt. 37-24.

[9]     Dkt. 37-13, at 3; *see* Dkt. 37-11, at 4 (Stackhouse's narrative states that when he grabbed Curl's wrist, Curl "jerked away from me and attempted to run across the highway").

[10]    Dkt. 37-17, at 00:41-00:57.

arms (Dkt. 37-13, at 4). In an attempt to get control of Curl's arms, he delivered nine

knee thrusts to Curl while Stackhouse was on his back:

> I get off the ground and try using my hands to pry Curl's arms from [sic]
> away from his sides and pull his hands from underneath him. I am not
> successful and Curl does not voluntarily release his hands or arms but
> continues to actively resist. I increase the level of force by delivering 5
> knee thrusts to the side of his bicep on his left arm and I continue to say,
> "man give me your arm"; this was not effective, Curl continues to resist,
> Stackhouse is on his back on the ground trying to hold onto Curl so I
> depress the button on my collar radio and say, "we need some more units".
> Stackhouse is trying to get off the ground and comes to a kneeling position
> and says in his radio "1545 I'm fighting one." I deliver 4 more knee thrusts
> to Curl's left bicep area.

(*Id*.). The knee thrusts are visible and audible on the video.[11] After the knee thrusts,

West delivered nine punches to Curl's right arm and back:

> He continues to resist [after the knee thrusts] and keep his arms locked at
> his side and his hands underneath him. I then take my right hand, make a
> fist, reach over Curl's back and punch him in his right bicep and back area
> 9 times saying "get your hands behind your back."

(Dkt. 37-13, at 4). West's punches to Curl are visible and audible on the videos, and the

officers can be heard ordering Curl to place his hands behind his back.[12]

West states that, after Curl moved his hands from underneath his body, West

cuffed his right hand.

> As soon as Curl moves his hands from underneath his body and places the
> right one behind his back, I reach and grab my handcuffs attached to my
> belt and handcuff his right hand.

---

[11]     Dkt. 37-14 (DVR 3508), at 12:37; Dkt. 37-16, at 1:05-1:16.

[12]     Dkt. 37-14 (DVR 3508), at 12:37:43–12:37:49;  Dkt. 37-16, at 1:18-1:23.

(Dkt. 37-13, at 4). West maintains that he "only used the level of force [that] was necessary to effect Curl's arrest" (*id.*). Although Curl alleges in his proposed amended pleadings that Defendants used force ***after*** he was handcuffed,[13] the video evidence does not support this allegation. In fact, the video evidence submitted by Plaintiff (Dkt. 51, at Exhibit 1) shows that knee thrusts were delivered (*id.* at 00:32-00:37), then punches (*id.* at 00:37-00:41), and that Curl then lifted his arm upward (*id.* at 00:41). The video shows no use of force after that time. Soon after, Stackhouse relaxed his hold on Curl and sat up (*id.* at 00:42-49).

Stackhouse states in his report that, after being searched for weapons, Curl was placed in Stackhouse's patrol car (Dkt. 37-11, at 4). Photos from the vehicle's camera show Curl in the back seat (Dkt. 37-32), and then reaching into his sock (Dkt. 37-33). Stackhouse states that he later retrieved a clear plastic bag from the rear passenger seat where Curl had been seated, and that the bag's contents tested positive for crack cocaine (Dkt. 37-11, at 4). Plaintiff was charged with resisting arrest, possession of a controlled substance, and tampering with evidence (Dkt. 53-1, at 3), and was taken to Brazoria County Detention Center.

Plaintiff claims, and the videos supplied by Defendants demonstrate, that several unidentified civilians were present during the use of force. As Curl alleges, the video shows the civilians speaking with officers, picking up the papers that Curl had been

---

[13]     *See* Dkt. 53-1, at 2-3 ("During the course of the stop and arrest and ***after*** being handcuffed Defendants, Matt West and Paul Stackhouse[,] threw Mr. Curl to the ground, repeatedly and forcefully punched him over 18 times in the head and rib-cage with his fists, and over 9 times kicked Mr. Curl in the head and restrained Mr. Curl using their feet as depicted in the body camera video until Mr. Curl was motionless and felt lifeless") (emphasis added).

holding, and apparently searching the area where Curl had struggled with the Defendants.[14]

Medical records from the Brazoria County Detention Center state that Curl was examined and had abrasions on his knee and fingers (Dkt. 37-5; Dkt. 37-6; Dkt. 51-2, at 19). Plaintiff alleges that an intake officer at the detention center did not record his visible injuries, but that a jail nurse later made entries that were correct (Dkt. 53-1, at 3-4, 11). Curl further alleges in his proposed pleadings that he requested, but was refused, a grievance form and a "chance to speak to [a] jail official" (*id*. at 3-4).

Plaintiff was incarcerated for two days. On October 18, 2013, he bonded out of jail (*id*. at 4). Plaintiff has presented medical records showing that on October 18, 2013, after his release and at his own expense, Plaintiff sought care at an emergency center. He was diagnosed with contusion (bruising) and muscle strain (Dkt. 51-2, at 10-18). Although Plaintiff also alleges that he suffered a concussion and that his arm was placed in a sling (Dkt. 53-1, at 3), the medical records he furnished do not support these allegations. Plaintiff presents evidence of a CT scan of his head and brain on October 18th that showed no acute abnormalities (Dkt. 51-2, at 12). He was discharged from the emergency center in stable condition within hours (*id*. at 17-18). He filed this lawsuit on September 17, 2015.

---

[14]     *See*, *e.g.*, Dkt. 37-14 (DVR 3508), at 12:38-12:57.

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Plaintiff filed this suit as a TDCJ inmate proceeding *in forma pauperis*. In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeded *pro se* in this case for over two years before retaining counsel in March 2018. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B. Summary Judgment—Rule 56

Defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court,

even if it exists in the summary judgment record.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

III.  **ANALYSIS**

Plaintiff brings claims against Brazoria County, Matt West, Paul Stackhouse, and Linsy Mariam.  Mariam has presented an affidavit stating that she was not present for any relevant events (Dkt. 37-12), and Plaintiff now agrees that her dismissal from this suit is appropriate (Dkt. 51, at 3).

A.  **Plaintiff's Request for Leave to Amend His Pleadings**

Since retaining counsel, Plaintiff Curl has moved for leave to amend his complaint under Rule 15(a) (Dkt. 53).  Defendants oppose the motion (Dkt. 56).

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court must have a "substantial reason" to deny a request for leave to amend.  *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016).  Leave to amend is not automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."  *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (internal citation and quotation marks omitted).  A district court "should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'"  *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)).

Plaintiff's proposed amended complaint seeks to bring claims for use of excessive force in violation of the Fourth and Eighth Amendments. The Fourth Amendment claim is thoroughly considered in this Memorandum Opinion. Any claim against West and Stackhouse under the Eighth Amendment would be futile because the Eighth Amendment applies to claims of excessive force against inmates, not arrestees. *See, e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34 (2010).

Plaintiff also seeks to bring sweeping new claims against Brazoria County based on alleged county policy, pertaining not only to the issue of excessive force but also to racial profiling, failure to train, the "code of silence," and other issues.[15] Plaintiff filed this suit in 2015, and has never previously claimed that he was injured by a county policy.[16] Rather, he alleged a *respondeat superior* theory of liability against the County, a theory he abandons in his current briefing (Dkt. 51, at 3). His primary claim always has

---

[15]     *See, e.g.*, Dkt. 53-1, at 15 ("Brazoria County has a variety of policies, customs, practices, and procedures which individually or in concert caused the Constitutional rights complained of herein including but not limited to, racial profiling, failure to train in the use of force, failure to discipline, failure to supervise, failure to fire or reassign officer, a pattern of improper Sheriff and medical personnel use of unjustifiable deadly force and excessive force, depriving adequate medical care, and a code of silence, and Brazoria County Sheriff investigating Brazoria County Sheriff to name a few"); *id*. at 16-17 ("[Curl's] injuries [were] caused by [a] Brazoria County policy-level decision to fail to act in supervising, training deputies in racial profiling, the use of force, the Seven Step traffic stop, use of force continuum and when Civilians participation [sic] during traffic stop. Brazoria County Sheriff has a pattern of racial profiling and abuse of Blacks in particular Pearland, Texas . . . . Brazoria County has a policy, practice and custom of failing to adequately, supervise, monitor, discipline and otherwise control its Sheriff Deputies"); *id*. at 20 ("Brazoria County has a pattern and practice of depriving adequate medical care to inmates in the custody of the jail").

[16]     To prove a Section 1983 claim against a county, the plaintiff must show that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (internal citation and quotation marks omitted); *see Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999).

been that Officers West and Stackhouse used excessive force against him. Given that this case has been pending for nearly three years and is now at the summary judgment stage, and that the incident in question occurred in 2013, the Court concludes that Defendants would be prejudiced by the new theories of liability against Brazoria County. *See Am. Int'l Refinery*, 676 F.3d at 467 ("A court is often justified in denying a motion for leave to amend when it would fundamentally alter the nature of the case") (internal citation and quotation marks omitted).

The Court in its discretion therefore denies Plaintiff's motion for leave to amend because the amendment is prejudicial and futile. *See id*. at 466-67; *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 531 (5th Cir. 2004). The fact that Plaintiff retained new counsel several years into the lawsuit is, given all the circumstances of this case, an insufficient reason for granting leave to amend. *See Am. Int'l Refinery*, 676 F.3d at 467. However, as stated previously the Court will consider the factual allegations in the proposed amended pleadings when ruling on Defendants' summary judgment motion.

**B.    Fourth Amendment Excessive Force Claim**

Plaintiff alleges that his Fourth Amendment rights were violated because Defendants used excessive force during his arrest. Defendants have moved for summary judgment on the Fourth Amendment claim and on qualified immunity grounds. To defeat summary judgment, Plaintiff must do more than state a claim upon which relief can be granted; he must demonstrate a genuine issue of material fact on all elements of the case for which Plaintiff bears the burden of proof. *See Firman*, 684 F.3d at 538.

The Fourth Amendment guarantees the right to be free from excessive force during an arrest. A plaintiff must show (1) an injury that (2) "resulted directly and only from a use of force that was clearly excessive to the need," the excessiveness of which was (3) objectively unreasonable. *Peña*, 879 F.3d at 619; *see Griggs v. Brewer,* 841 F.3d 308, 312 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Because some use of force by law enforcement is reasonable when necessary to effect an arrest, the question for the Court is whether the force was clearly excessive to the need. *See Scott v. Harris*, 550 U.S. 372, 382-83 (2007). The court must evaluate the use of force "from the perspective of a reasonable officer on the scene," and not "with the 20/20 vision of hindsight." *Griggs*, 841 F.3d at 312 (citing, *inter alia*, *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

The court's inquiry is fact-intensive and focuses on whether the officers' actions were objectively reasonable, taking in to account the particular circumstances at the time force was used. *Griggs*, 841 F.3d at 312. "Factors to consider in determining whether the force was objectively reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (internal citations and quotation marks omitted). *See Graham*, 490 U.S. at 397; *Tennessee v. Garner,* 471 U.S. 1 (1985). Although a *de minimus* injury is not cognizable, "even insignificant injuries may support an excessive force claim, as long as they result from unreasonably excessive force." *Sam v. Richard*, 887 F.3d 710, 713-14 (5th Cir. 2018)

(citing the "some injury" test in *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)).

Defendants have invoked qualified immunity, and Plaintiff bears the burden to negate the defense. *See Griggs*, 841 F.3d at 312; *Cousin v. Small*, 325 F. 3d 627, 632 (5th Cir. 2003).[17] Determination of qualified immunity requires a bifurcated analysis: first, the court must decide whether plaintiff has alleged a violation of a constitutional or statutory right that is "clearly established"; second, the court must determine whether the defendant's actions were "objectively reasonable" in light of the law that was clearly established at the time of the incident. *See Griggs*, 841 F.3d at 312-13; *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *see Griggs*, 841 F.3d at 312; *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.'" *Griggs*, 841 F.3d at 313 (quoting *Tarver v. City of Edna*, 410 F.3d 742, 750 (5th Cir. 2005)). The officers' subjective intent or motivation is irrelevant to the Court's analysis. *See Poole*, 691 F.3d at 628.

The summary judgment evidence in the record, including the video evidence, supports Defendants' position that the use of force by West and Stackhouse during their

---

[17]     Although Plaintiff argues that the burden of proof should not shift (Dkt. 51, at 11), in fact Defendants pleaded their good faith (Dkt. 22, at 3) and were acting within the scope of their discretionary authority as deputy sheriffs during their encounter with Curl. *See Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

encounter with Curl was objectively reasonable in light of the circumstances.[18] As recounted above, Curl did not comply with the officers' instructions to show them what was in his hands. West states in his affidavit that, based on his training and experience, Curl's noncompliance led him to believe that it was likely that Curl had contraband or a weapon (Dkt. 37-13, at 3). The video evidence shows that Curl struggled with the officers as they attempted to gain control of his hands to handcuff him, moving towards the highway's traffic lanes. Curl agrees that he attempted to flee from Defendants (Dkt. 53-1, at 8). The video captures the officers repeatedly telling Curl, during the struggle, to place his hands behind his back, and corroborates West's statement in his affidavit that, once Curl was handcuffed, no additional force was used. Nothing in the video evidence contradicts Defendants' position that they used a reasonable amount of force to effect the arrest given Curl's attempt to flee and the ensuing struggle. *See Scott*, 550 U.S. at 380-81.

Curl argues that, because he was unarmed, he posed no threat to the officers. However, the officers did not have this information at the time, because they had not yet patted him down for weapons or contraband. *See Griggs*, 841 F.3d at 312 (courts must consider the particular circumstances at the time force was used "from the perspective of a reasonable officer on the scene," and not "with the 20/20 vision of hindsight").

---

[18] The Supreme Court has held that, on summary judgment, reliance on video evidence is appropriate. *Scott*, 550 U.S. at 380-81 ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape"). All parties in this case urge the Court to rely on the video evidence.

Curl also relies on his injuries to argue that summary judgment should not be entered, stating that his injuries are visible on the video. Evidence in the record demonstrates that Curl suffered abrasions and bruising (Dkt. 51-2, at 10-18). However, although evidence of injuries can support an excessive force claim, Plaintiff must demonstrate that the injuries resulted from "unreasonably excessive force." *See Sam*, 887 F.3d at 713  As held above, Plaintiff has not demonstrated a genuine issue of fact on this question.[19]

For all of the reasons above, summary judgment will be granted for Defendants on Plaintiff's excessive force claim. Plaintiff has failed to demonstrate a genuine issue of material fact on several essential elements of his case, including whether the force used was "clearly excessive to the need" and whether Defendants' actions were objectively reasonable given the totality of the circumstances. *See Peña*, 879 F.3d at 619; *Griggs*, 841 F.3d at 312. Defendants therefore are entitled to summary judgment on Plaintiff's Fourth Amendment claim and, for the same reasons, on qualified immunity grounds.

### C.    Fourteenth Amendment Medical Care Claim

Plaintiff claims that he was adequate denied medical care during his two-day pretrial incarceration in the Brazoria County Detention Center. Defendants seek

---

[19]    Plaintiff also appears to argue that the arrest was not supported by probable cause (Dkt. 51, at 3-4; Dkt. 53-1, at 6-7). However, whether the arrest was justified is irrelevant to the court's adjudication of Plaintiff's excessive force claim. *See Freeman v Gore*, 483 F.3d 404, 417 (5th Cir. 2007). In addition, to the extent Curl relies upon the presence of several unidentified civilians during the use of force and arrest, he cites no authority suggesting that their presence is relevant to, or could prevent summary judgment on, his Fourth Amendment claim.

summary judgment on this claim because Plaintiff failed to exhaust his administrative remedies.

Administrative exhaustion is mandatory under the Prisoner Litigation Reform Act, and an inmate bringing an action regarding prison conditions under 42 U.S.C. § 1983 or other federal law must first exhaust all administrative remedies "as are available." 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850 (2016); *Jones v. Bock*, 549 U.S. 199, 212 (2007). The Fifth Circuit strictly enforces the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Defendants have presented evidence that Curl filed no grievances during his incarceration. *See* Dkt. 37-2 (affidavit of Jail Captain Tay Parthum), at 4. Plaintiff's summary judgment briefing does not present evidence that he exhausted his administrative remedies. Rather, Plaintiff argues in his response (Dkt. 51, at 2) that the exhaustion requirement should not apply because he recently filed a ***proposed*** amended complaint (Dkt. 53-1), after his release from TDCJ, and therefore should no longer be required to satisfy the requirements of the Prison Litigation Reform Act. Plaintiff provides no authority for this argument and, moreover, the Court in this Memorandum Opinion denies Plaintiff leave to file the proposed amendment. Defendants are entitled to summary judgment on exhaustion grounds for Plaintiff's medical care claim.

In any event, even if Plaintiff could show exhaustion, his claim would not survive summary judgment. Claims regarding conditions of pretrial detention arise under the Fourteenth Amendment, which Plaintiff has not pleaded. A Fourteenth Amendment claim requires proof that a jail official had subjective knowledge that the plaintiff was

subject to "a substantial risk of serious harm" and that the official "responded to that risk with deliberate indifference." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 464 (5th Cir. 2015) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)). Under these standards, Plaintiff's claim would fail because he has not sued *any* individual defendant in connection with his medical care claim, and does not allege that any particular official was deliberately indifferent to his medical needs.[20]

Finally, the uncontradicted summary judgment evidence demonstrates that Plaintiff actually received medical attention during his incarceration (Dkt. 37-5; Dkt. 37-6). To the extent Plaintiff disagrees with the particular medical treatment he received, such an allegation does not state a claim for deliberate indifference to serious medical needs. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Moreover, Curl's evidence demonstrates that, when he was released and sought his own care, he received essentially the same treatment, in particular, examination and over the counter medication (Dkt. 51-2, at 10-18).

Summary judgment is granted for Defendants on Plaintiff's claim regarding medical care during his pretrial detention.

## IV.   CONCLUSION

For the reasons stated above the Court **ORDERS** that:

---

[20]   Even in Plaintiff's proposed amended pleadings regarding an alleged Brazoria County policy to deny adequate medical care to pretrial detainees (Dkt. 53-1, at 19-20), Curl makes no specific factual allegations supporting the existence of the purported policy or a policymaker's knowledge of it. *See Peña*, 879 F.3d at 623 (affirming judgment for defendant on the pleadings and stating that a municipality "cannot be liable for an unwritten custom unless actual or constructive knowledge of such custom is attributable to a . . . policymaker") (internal quotation marks and citation omitted).

1.      Plaintiff's motion to amend his complaint (Dkt. 53) is **DENIED**.

2.      Defendants' motion for summary judgment (Dkt. 37) is **GRANTED**.  All

of Plaintiff's claims are **DISMISSED with prejudice**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 14th day of August, 2018.

George C. Hanks Jr.
United States District Judge